IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE HOBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-262-MAB |
| | ) |
| USAA GENERAL INDEMNITY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion to dismiss the amended complaint filed by Defendant USAA General Indemnity Company ("USAA") (Doc. 25). For the reasons explained below, the motion is granted as to Count 1 and denied as to Counts 2 and 3.

### THE AMENDED COMPLAINT

Plaintiff Stephanie Hobbs filed an amended complaint on June 4, 2020 against USAA General Indemnity Company (Doc. 24). She alleges that she was injured in a car accident on January 4, 2013. The other driver, James Cates, was at fault. Mr. Cates was insured by USAA General Indemnity, with a policy limit of $50,000 per occurrence.

In July 26, 2013, Ms. Hobbs' attorney sent her medical records and bills to USAA, which included a doctor's report indicating that she needed surgery. In December 2013, Ms. Hobbs filed suit against Mr. Cates over the accident in the Circuit Court of Franklin

County, Illinois. Approximately three months later, on March 14, 2014, Ms. Hobbs' attorney sent a letter demanding that USAA tender its policy limit of $50,000 by March 30, 2014 or she would proceed with the lawsuit. Included with the demand were updated medical records that indicated Ms. Hobbs was proceeding with the surgery. Ms. Hobbs alleges that it should have been apparent to USAA that the value of her case exceeded the policy limit of $50,000.

It wasn't until September 2, 2014—approximately five months after the March 30, 2014 deadline imposed by Ms. Hobbs—that USAA offered its policy limit of $50,000, contingent on an agreement involving medical and subrogation liens. Ms. Hobbs never accepted the offer. The lawsuit proceeded to a jury trial in May 2019, and the jury awarded Ms. Hobbs $866,000. Judgment was entered against Mr. Cates in that amount on May 31, 2019.

Ms. Hobbs alleges that USAA has not paid the judgment, nor has Mr. Cates. Cates assigned his claims against USAA to Hobbs in exchange for a complete release of liability on the judgment. Ms. Hobbs then filed this bad faith lawsuit against USAA alleging USAA breached the duty of good faith it owed to Cates. In Count 1, Ms. Hobbs seeks payment of the $50,000 policy limit. In Counts 2 and 3, Ms. Hobbs alleges USAA acted negligently or in bad faith by failing to settle her claim for the policy limit.

**A.  Count 1**

In Count 1, Ms. Hobbs alleges that USAA owes a minimum of $50,000 under their policy and asks the Court to order to USAA to pay its $50,000 policy limit (Doc. 24, pp. 2, 3). USAA represents that on June 15, 2020, it sent Ms. Hobbs' attorney a check for

$54,821.00, which accounted for the $50,000 policy limit plus $4,821 in post-judgment interest (Doc. 25, p. 4; Doc. 25-1). Ms. Hobbs and her attorney both endorsed the check and deposited it their client trust account (Doc. 25-1). Therefore, USAA argues that Count 1 is moot and should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction. Ms. Hobbs did not respond or otherwise object to USAA's argument.

Because Ms. Hobbs was paid the full amount she requested in Count 1, her claim for the policy limit is moot and dismissal under Rule 12(b)(1) for lack of jurisdiction is appropriate. *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814 (7th Cir. 2018); *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 597 (7th Cir. 2012); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). The motion to dismiss will be granted as to Count 1.

### B. Counts 2 & 3

USAA argues that Counts 2 and 3 should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the allegations fail to state a plausible claim for which relief can be granted (Doc. 25).

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). The complaint must contain sufficient factual information "to state a claim to

relief that is plausible on its face,'" meaning the court can reasonably infer that the defendant is liable for the alleged misconduct. *Burger*, 942 F.3d at 374 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Camasta*, 761 F.3d at 736 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The complaint need not, however, contain "detailed factual allegations." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

In diversity cases, state substantive law applies, and both parties here agree that the applicable state law is the law of Illinois. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 922 F.3d 778, 784 n.3 (7th Cir. 2019) (citations omitted); *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citations omitted). Under Illinois law, "an insurer has a duty to act in good faith when responding to a settlement offer." *Surgery Ctr.*, 922 F.3d at 784 (citing *Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001)). "While an insurer may consider its own interests when evaluating a settlement offer, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to it acts in bad faith." *Surgery Ctr.*, 922 F.3d at 784 (citation and internal quotation marks omitted). To state a bad-faith claim against an insurer in Illinois, the plaintiff must allege facts sufficient to demonstrate that "(1) the duty to settle arose; (2) the insurer breached the duty; and (3) the breach caused injury to the insured." *Surgery Ctr.*, 922 F.3d at 778 (citation omitted).

The duty to settle arises when a third party has sued the policyholder "and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured'" but the third party has offered to

settle the claim for an amount within the policy limits. *Surgery Ctr.*, 922 F.3d at 785 (quoting *Haddick*, 763 N.E.2d at 304). That duty is breached when the insurer fails to settle due to fraud, negligence, or bad faith, resulting in an excess judgment against the insured. *Meixell v. Superior Ins. Co.*, 230 F.3d 335, 337 (7th Cir. 2000) (citing *Adduci v. Vigilant Insurance Co. Inc.*, 424 N.E.2d 645, 648 (Ill. App. Ct. 1981)). The insurer may then be held liable for the full amount of the judgment irrespective of the policy limits. *Meixell*, 230 F.3d at 337 (citing *Adduci*, 424 N.E.2d at 648).

1. **Duty to Settle**

USAA first argues that Ms. Hobbs failed to sufficiently allege the first element—that the duty to settle arose—because she did not allege facts demonstrating a reasonable probability that she would recover a judgment in excess of the $50,000 policy limit (Doc. 25, p. 7). Ms. Hobbs alleges that she provided USAA with medical records and bills, which contained "enough . . . information" for USAA to "determine that Plaintiff's case far exceeded their $50,000 policy limit (Doc. 24, pp. 5, 9, 10). USAA argues that Ms. Hobbs needed to be more specific and allege, for example, the total amount of her medical bills, what treatment she had already received, and what surgery she needed and how much it cost (Doc. 25, p. 7). The Court disagrees. While such details would have been helpful (and would have preempted USAA's argument), they are not necessary. Ms. Hobbs alleged that the medical records and bills demonstrated her damages exceeded $50,000 (which is certainly plausible given that a jury later awarded her $866,000), and the Court must accept that allegation as true at this stage of the proceedings. Therefore, Ms. Hobbs has sufficiently pled the first element of a bad faith claim.

### 2. Breach of Duty

USAA next argues that Ms. Hobbs failed to plausibly allege that USAA breached its duty (Doc. 25, pp. 8–11). In Count 2, Ms. Hobbs alleges that USAA breached its duty to settle her claim by acting in bad faith (Doc. 24). Specifically, she alleges that USAA (1) failed to promptly evaluate her claim, (2) failed to competently evaluate her claim, (3) failed to promptly contact an attorney to represent Cates, when an attorney would have known that it was in the best interest of Cates to settle the case for the policy limits within the time demanded by Hobbs, (4) failed to tender the policy limit when it knew or should have known that Hobbs' claim exceeded $50,000, (5) failed to tender the policy limit within the time demanded by Hobbs, and (6) failed to tender the policy limit to Hobbs following the verdict even though that amount was undisputed (Doc. 24, p. 7). In Count 3, Ms. Hobbs alleges that USAA breached its duty to settle her claim by acting negligently for these same reasons (Doc. 24, p. 11).

USAA argues there are no facts to support the first three acts alleged by Hobbs—that USAA failed to promptly or competently evaluate her claim and/or failed to promptly contact an attorney (Doc. 25, p. 8). But, again, detailed factual allegations are not required. And based on the facts that *are* pleaded in the complaint, the Court finds it plausible that USAA acted negligently or in bad faith in the ways Hobbs alleged.

The Court is likewise unpersuaded by USAA's arguments regarding the fourth and fifth acts alleged by Hobbs—that USAA failed to tender the policy limit at various points during the underlying litigation. As a general principle of law, an insurer can breach its duty to the policyholder when it fails to respond to a settlement demand from

a third party who made a claim against the policyholder, or delays responding to the demand. *Adduci v. Vigilant Ins. Co.*, 424 N.E.2d 645, 649 (Ill. App. Ct. 1981); *Meixell v. Superior Ins. Co.*, 230 F.3d 335, 338 (7th Cir. 2000) (J. Rovner, dissenting). Whether an insurer's failure to respond or delayed response constitutes negligence or bad faith depends on the circumstances of the case. STEVEN PLITT, 14A COUCH ON INSURANCE § 206:28 (3d ed.)); James P. Marsh, *The Tort of "Bad Faith Refusal to Settle" in Illinois*, DCBA Brief, June 2008, at p. 10, *available at* Westlaw citation 20 DCBA Brief 8. "The appropriate time for response should take into account such factors as the complexity of the case, the complexity of the offer, and the state of the negotiations (*i.e.*, has the settlement offer come close on the heels of the initial claim, or has the insurer already had significant amounts of investigation time)." STEVEN PLITT, 14A COUCH ON INSURANCE § 206:28 (3d ed.)[1]

Here, Ms. Hobbs alleged facts demonstrating that USAA had approximately fourteen and a half months to investigate the accident before she issued her demand to settle for the $50,000 policy limit. It was a time-limited demand and USAA refused to

---

[1] *See Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 305 (Ill. 2001) (reversing dismissal of bad-faith claim where insurer failed to respond to plaintiff's demand to settle for the policy limits within the one month deadline she imposed despite having 11 months to investigate the accident, and insurer waited another year and until after plaintiff had filed suit against the policyholder to offer to settle for the policy limit). *But see Meixell v. Superior Ins. Co.*, 230 F.3d 335, 336, 337 (7th Cir. 2000) (affirming dismissal of bad-faith claim where plaintiff failed to explain why he rejected the insurer's offer to settle on his terms or how he would have been prejudiced by accepting it when the offer came only three months after the insurer initially rejected plaintiff's demand, plaintiff's attorney had never established a timeline for negotiations, the insurance company believed negotiations were ongoing, and plaintiff had not yet filed suit those terms); *Adduci v. Vigilant Ins. Co.* 424 N.E.2d 645, 647, 649 (Ill. App. Ct. 1981) (holding plaintiffs failed to sufficiently allege a breach of duty when they alleged that insurer responded late to their settlement demand when the insurer offered to settle on their terms only 40 days after plaintiffs' self-imposed deadline and plaintiffs did not allege facts showing "why [they] found it impossible to accept the offer . . . so as to fairly place the blame for failure of settlement upon Insurer. The allegations of the complaint simply do not show why the offer would have been good on May 7, 1976, but was not acceptable on June 18, 1976.")

settle by the deadline she imposed.[2] Therefore, she proceeded with her lawsuit (which was already underway). On September 2, 2014, approximately five months after Hobbs' demand had expired (and nine months after her lawsuit had been pending and 20 months after the accident occurred), USAA then offered to settle for the policy limit. Hobbs never accepted the settlement offer and she alleged some of her reasons for her decision (Doc. 24, p. 6).[3] A jury later awarded her $866,000—over 17 times the amount Cates' insurance policy provided for. Accepting all allegations as true, the Court finds that given the totality of the circumstances and the timeline of events, Ms. Hobbs has alleged facts sufficient to present a plausible story that USAA acted negligently or in bad faith in failing to settle Hobbs' claim and breached its duty to Cates.

As for the sixth alleged act committed negligently or in bad faith by USAA—failure to tender the policy limit to Hobbs following the jury verdict—USAA argues that this action has no bearing on a claim for bad faith failure to settle (Doc. 25, p. 8). While this argument appears logical to the Court, it does not justify dismissal of Count 2 or 3. This alleged act was just one of six that form the basis of Hobbs' bad faith claims, and as already discussed the others are sufficient to allege a breach of duty.

### 3. Proximate Cause

USAA next argues that under the reasoning of *Meixell v. Superior Ins. Co.*, 230 F.3d

---

[2] It is not clear if USAA formally responded and rejected Ms. Hobbs' demand or if USAA simply did not respond to the demand by the March 30, 2014 deadline that Hobbs imposed (*see* Docs. 24, 25).

[3] *See Meixell v. Superior Ins. Co.*, 230 F.3d 335, 340 (7th Cir. 2000) (J. Rovner, dissenting) (explaining there is no rule that in order to succeed on a negligence or bad faith settlement claim, a plaintiff must plead facts demonstrating that a later settlement offer could not have been accepted; whether an "offer indeed could have been accepted . . . [is] not determinative of whether the insurer acted reasonably.")

335 (7th Cir. 2000) and *Adduci v. Vigilant Ins. Co.* 424 N.E.2d 645 (Ill. App. Ct. 1981), Ms. Hobbs failed to plausibly allege that its actions proximately caused harm to Mr. Cates (Doc. 25, p. 11). Those cases, however, did not address proximate cause and analyzed only the breach of duty element. Furthermore, the facts alleged by Ms. Hobbs allow the Court to reasonably infer a causal connection between USAA's decision not to accept Hobb's demand and the subsequent judgment in excess of the policy limits. *See Meixell v. Superior Ins. Co.*, 230 F.3d 335, 341-42 (7th Cir. 2000) (J. Rovner, dissenting) (explaining how proximate cause is satisfied in bad-faith settlement claim)

In sum, Ms. Hobbs has sufficiently pleaded all the elements of a bad-faith settlement claim and Counts 2 and 3 will proceed.

## CONCLUSION

The motion to dismiss (Doc. 25) is **GRANTED in part and DENIED in part.** It is granted as to Count 1, which is **DISMISSED with prejudice**. It is denied as to Counts 2 and 3.

**IT IS SO ORDERED.**

**DATED: March 10, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
