IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE HOBBS, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:20-CV-00262-MAB |
| | ) |
| USAA GENERAL INDEMNITY COMPANY, | ) |
| | ) |
|        Defendant. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on a discovery dispute between Plaintiff Stephanie Hobbs ("Hobbs") and Defendant USAA General Indemnity Company ("USAA"). USAA produced a redacted version of a document to Hobbs under objections of relevancy and privilege, but Hobbs believes she is entitled to the complete, unredacted document, to the extent that relate to her claims. Further, the parties dispute the appropriateness of deposition Topic 3 set out in Hobbs' Rule 30(b)(6) notice.

The parties met and conferred pursuant to the Court's case management procedures but were unable to resolve their conflict without Court intervention. On May 17, 2022, the Court heard oral arguments from the parties and ordered supplemental briefing (Doc. 63). Hobbs and USAA have each filed briefs in support of their respective positions and the Court has conducted an *in camera* review of the relevant document (*See* Docs. 65 & 68). For the reasons explained below, USAA's objections as to relevancy are OVERRULED, USAA's objections based on attorney-client privilege are OVERULLED,

and USAA's objections based on work product are OVERRULED as to documents dated before the filing of the instant litigation and SUSTAINED as to documents dated on or after the filing of the instant litigation. USAA's objection to Topic 3 in Hobbs' Rule 30(b)(6) notice is OVERRULED.

## BACKGROUND

In December 2013, Hobbs filed a personal injury lawsuit against one of USAA's insured, James Cates, who caused a car accident that injured Hobbs. Cates tendered the suit to USAA and USAA defended Cates through its insurance-defense counsel. Hobbs made a time sensitive settlement demand to USAA to tender its policy limits of $50,000 by March 30, 2014. However, USAA did not tender the policy limits until September 2014. Hobbs rejected USAA's tender because it was past the deadline she imposed on the demand. The case proceeded to a jury trial, and in May 2019, a jury awarded Hobbs $866,000. Judgment was entered in favor of Hobbs for the same amount. However, neither Cates nor USAA has paid the judgment.

Cates subsequently assigned his rights to any potential claim against USAA to Hobbs. In February 2020, Hobbs filed this lawsuit against USAA (Doc. 1). Hobbs' Amended Complaint alleges USAA failed to pay the judgment (Count I) and USAA violated its duty of good faith (Count II) and duty of ordinary care (Count III) to protect Cates' interests by: failing to promptly and completely evaluate Hobbs' claims; failing to promptly contact an attorney to represent Cates, when an attorney would have known it was in Cates' best interest to settle with Hobbs for the policy limits; failing to tender the policy limits when it was clear that Hobbs' claim exceeded the limits; failing to tender the

policy limits within the time Hobbs demanded; and failing to tender the policy limit to Hobbs following the verdict (Doc. 24).

During discovery in this case, USAA produced heavily redacted notes maintained by USAA's legal department ("Litigation Notes"). The Litigation Notes contain summaries of events and correspondence related to Hobbs' personal injury lawsuit. USAA states that the Litigation Notes were "created and maintained by USAA GIC's legal department" shortly after Hobbs' March 2014 deadline expired for USAA to tender its policy limit (Do. 65, p. 1-2). Around this time, USAA transferred Hobbs' claim from its claims handling department to its litigation department because it became apparent that Hobbs would proceed with her lawsuit against Cates. The litigation department marked the Litigation Notes as "CONFIDENTIAL" and "ATTORNEY WORK PRODUCT."

USAA redacted over 100 dated entries in the Notes, including all entries that postdate September 2014, when USAA tendered the policy limits. USAA argues that any of its actions after September 2014 are irrelevant to Hobbs' claims. Also, USAA argues the redacted entries are privileged attorney-client communications and work product that are protected from disclosure. USAA does not specify which entries are irrelevant, which entries are privileged work product, or which entries are privileged attorney-client communications.

Further, Hobbs issued a Rule 30(b)(6) deposition notice to USAA to take the deposition of USAA's representative. The notice lists proposed topics, including: "The duties USAA owed to James Riley Cates in handling the automobile claim brought

against him and the policy-limit demand that was made on him by Stephanie Hobbs."

USAA objects to this topic on the basis that it elicits a legal opinion.

## **LEGAL STANDARDS**

Under Illinois law, an insurer has a duty to settle claims against its insured in good faith. *Iowa Physicians' Clinic Med. Found. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008). The Seventh Circuit has explained:

> The paradigmatic duty-to-settle case involves three parties: the injured third party; the insured, who is being sued; and the insurer, who controls the insured's defense. If the third party sues the insured for an amount above the policy limit and seeks a settlement at the upper limit of the policy, a conflict of interests arises. In this situation, the insurer may be tempted to decline the settlement offer, no matter how good the deal is for the insured, and go to trial. It makes no difference to the insurer's bottom line whether the case is settled or the jury awards astronomical damages; in either event it will pay out only the maximum on the policy. And if the case goes to trial, at least there's a shot that they will win and pay nothing. The insured, on the other hand, calculates the risks of trial differently because he will be stuck paying anything above the policy limit. To combat the temptation to ignore an insured's interest and to make sure that the intent behind the insurance contract is upheld, Illinois courts have recognized that an insurer has a duty to act in good faith in responding to settlement offers, and if that duty is breached the insurer is on the hook for the entire judgment, regardless of the policy limit.

*Id.* (internal quotations and citations omitted).

In a bad faith refusal to settle case, "the plaintiff insured is entitled to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision." *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 1996 WL 89225, at *1 (N.D. Ill. Feb. 27, 1996). However, discovery is not without limitations. Federal Rule of Civil Procedure 26(b) sets out the scope of the matters upon which a party can seek discovery. "Parties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(3).

Federal Rule of Civil Procedure 30(b)(6) addresses depositions directed to an organization and provides that the deposition notice must "describe with reasonable particularity the matters for examination," after which the organization "must then designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Rule 30(b)(6) depositions are limited by the scope of discovery set out in Rule 26(b). *Schyvincht v. Menard, Inc.*, 2019 WL 3002961, at *2 (N.D. Ill. July 10, 2019).

## ANALYSIS

### I. Litigation Notes

#### A. Relevancy Objections

USAA contends that any of the Litigation Notes that post-date September 2014 are irrelevant. USAA tendered the policy limits in September 2014 and thus, according to USAA, any events after September 2014 are not indicative of whether USAA acted in bad faith in not tendering the policy limits.

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." To establish a claim for bad faith refusal to settle, the plaintiff must establish "the insurer knew claims would exceed the policy limits, that such knowledge

overlapped in time with an opportunity to settle the case, that a settlement would have addressed all claims against the insured, and that the insurer nevertheless failed to equally value its own interest and the insured's interests in failing to settle." *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 741 (S.D. Ill. 2016), *aff'd*, 878 F.3d 219 (7th Cir. 2017).

Here, USAA claims the Litigation Notes that post-date September 2014 are irrelevant, privileged as work-product, and constitute attorney-client privileged communications concerning Cates' assignment of rights to Hobbs. As an initial matter, these positions are inherently inconsistent. If requested documents were created in anticipation of Hobbs' lawsuit or this litigation, or relate to Cates' assignment of rights, then they are certainly relevant to how USAA handled the settlement of Hobbs' personal injury suit. Further, USAA does not state on a "document-by-document basis" why each entry is irrelevant. *Woodruff v. Am. Family Mut. Ins. Co.*, 291 F.R.D. 239, 242 (S.D. Ind. Apr. 22, 2013) (citing *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("perfunctory and underdeveloped arguments that are unsupported by pertinent authority, are waived.").

Nonetheless, the documents shed light on USAA's conduct in handling and investigating Hobbs' personal injury suit and USAA's decision-making process in negotiating a settlement with Hobbs. The post September 2014 notes are likely to lead to the discovery of admissible evidence concerning why USAA acted the way that it did in failing to settle Hobbs' lawsuit. This issue is at the core of a bad faith claim against an insurer and, therefore, the notes are relevant.

### B. Privilege

Next, USAA generally alleges that the post September 2014 notes are privileged as attorney-client communications or work product. As the party invoking these privileges, USAA bears the burden of establishing the Litigation Notes are not subject to discovery. *United States v. Lawless*, 709 F.2d 486, 487 (7th Cir. 1983) (attorney-client privilege); *see Logan v. Commercial Union Insurance Co.*, 96 F.3d 971, 976 (7th Cir.1996) (work product).

In diversity cases, federal courts apply the law of the state in which it sits regarding attorney-client privilege. FED. R. E. 501; *see Lorenz v. Valley Force Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir. 1987). Under Illinois law, attorney-client privilege is established:

> (1) Where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived.

*Lawless*, 709 F.2d at 487.

The work product doctrine is not coextensive with attorney-client privilege and each must be established separately. *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012). Unlike attorney-client privilege, the work product doctrine is "governed solely by federal law." *Abbott Laboratories v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. March 12, 2011). The work product doctrine protects documents that an attorney or a representative of a party creates in anticipation of litigation in order to prepare or analyze the case. FED.R.CIV.P. 26(b)(3); *Sandra T.E. v. South Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir.2010).

USAA states the Litigation Notes summarize entries that contain or reference attorney-client communications between USAA and its in-house and outside counsel regarding Cates' assignment of rights to Hobbs and the instant litigation. However, USAA does not particularly state which entries contain privileged communications and, in many instances, it is unclear whether the entries referencing Cates' assignment of rights involve communications between an attorney and client. "The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *Lawless*, 709 F.2d at 487.

Also, USAA's claim of attorney-client privilege is subject to scrutiny under the common-interest doctrine. It is important to reiterate that as the assignee of Cates' claims, Hobbs stands in Cates' shoes. "[U]nder the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. . .This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer." *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 193 (Ill. 1991).

However, the common interest doctrine only applies to communications that advance the shared goals of the insured and insurer. *See Waste Management*, 144 Ill.2d at 194 ("We believe that the communication by insureds with defense counsel is of a kind reasonably calculated to protect or to further those common interests."); *Baxter*

*International, Inc. v. AXA Versicherung*, 224 F. Supp.3d 648, 652 (N.D. Ill. Dec. 13, 2016) (and cases cited therein) (explaining *Waste Management* only extends to communications "concerning matters with respect to which an insured has a…common interest with its insurer"). The common interest doctrine does not extend to adversarial matters between the insured and insurer. *Id.*

USAA makes a brief reference to *Robert R. McCormick Foundation v. Arthur J. Gallagher Risk Management Services*, 2019 IL 123936 and states that USAA and Hobbs had no common interest in Cates' assignment of rights to Hobbs or this current lawsuit (Doc. 65, p. 5 at n.6). In *McCormick*, the plaintiffs brough suit against their former insurance broker for breach of contract to procure insurance, contractual indemnity, professional negligence, and negligent misrepresentation. 2019 IL 123936, at ¶ 3. The defendant advised the plaintiffs to obtain a certain insurance policy and when the plaintiffs were eventually sued, their insurer denied coverage under the policy. *Id.* at ¶¶6-10. The plaintiffs sued the insurance broker for improperly advising them on adequate coverage. *Id.* at ¶11.

The defendant argued the plaintiffs would have never been entitled to coverage under any policy because of their own fraudulent conduct. *Id.* at ¶13. The defendant subpoenaed the plaintiffs and their attorneys for communications related to the underlying lawsuits. *Id.* at ¶14. The plaintiffs argued the communications were privileged attorney-client communications but the defendant asserted that the common interest exception applied. *Id.* The Illinois Supreme Court rejected the defendant's argument because the defendant insurance broker never had a duty to indemnify or

defend the plaintiffs against the underlying lawsuit, and thus, never shared a common interest with the plaintiffs. *Id.* at ¶38. The court noted, "It seems to us that [the defendant's] and the [plaintiffs'] interests were always adverse, and there was not a commonality of interest in the same way that is the case when an insurer has a duty to indemnify and defend from the beginning." *Id.*

Unlike in *McCormick*, USAA has arguably always had a duty to defend and indemnify Cates under Cates' insurance policy. Thus, their interests in defeating or settling Hobbs' personal injury suit were certainly aligned and non-adversarial to this end. An *in camera* review reveals that the overwhelming majority of the redacted entries do not relate to Cates' assignment of rights or to the instant litigation and instead, relate to Cates' defense. Even assuming the entries otherwise meet the elements of attorney-client privilege, the privilege does not protect these communications because of the common-interest doctrine. *See Abbott Laboratories*, 200 F.R.D. 401, 407-408 (N.D. Ill. 2001).

While certain entries in the Litigation Notes reference adversarial matters between Cates and USAA, USAA has not articulated how each entry meets the elements of attorney-client privilege. *See Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990) (finding attorney-client privilege not sufficiently asserted where the party "did not address the applicability of the privilege with respect to each individual document he sought to exclude, nor did he set forth any specific facts to support his legal conclusions."); *Muro v. Target Corp.*, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006) (explaining a privilege log must provide "a specific explanation of why the document is privileged").

For instance, the Litigation Notes generally reference conversations with "DA," "PA," "NI," "LM," "EL," "Bill," Thomas Magee, Eugene Menges, and other named individuals. However, USAA does not identify the named individuals, state who its inside- and outside-counsel were, or the meaning of the abbreviations. Further, the Notes were maintained by USAA's litigation department and the entries within the notes were created by its litigation manager. But USAA does not explain the role of the litigation managers, whether they are attorneys, and, if so, whether they were acting as attorneys and giving legal advice in their capacities as litigation managers, or whether the litigation department consisted of individuals within USAA's "control group." *See Midwesco-Paschen Joint Venture For Viking Projects v. Imo Indus., Inc.*, 265 Ill. App. 3d 654, 664 (1994) ("Distribution of otherwise privileged material to individuals outside of the control group destroys the privilege."); *McDonalds Corp. v. Levine*, 108 Ill. App. 3d 732 (1982) (business advice, rather than legal advice, is not privileged); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 2005 WL 3690565, at *5 (C.D. Ill. Jan. 31, 2005) ("In the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply."); *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995) (attorney client privilege does not attach where attorneys act as "couriers of factual information" rather than "legal advisors").

As noted above, the entries in the Litigation Notes that concern Cates and USAA's common interest in defending Cates against Hobbs' lawsuit are not privileged. Further, USAA has not met its burden with respect to the remaining entries because there is

simply not enough information to determine whether the entries reflect communications between USAA and its counsel, whether the communications were made for the purpose of seeking legal advice, or whether communications were made in confidence. The Court cannot make a determination of the application of attorney-client privilege without this factual foundation. USAA's conclusory assertions of attorney-client privilege are insufficient.

Also, USAA argues the Court to find the Litigation Notes are privileged work product because they were created in anticipation of Hobbs' personal injury lawsuit against Cates. The work product doctrine, articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), is codified in Federal Rule of Civil Procedure 26. It provides, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," but "may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.*

The Seventh Circuit has specifically considered work product issues in bad faith claims against insurance companies: "[W]e recognize that allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an

action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir. 1996)

USAA cites *Logan* to argue that any document prepared in anticipation of Hobbs' personal injury lawsuit is protected from discovery. In *Logan*, the plaintiff suffered a work-related injury and filed a claim with the defendant, his workers' compensation insurance carrier. *Id.* at 973. Shortly after the injury, the plaintiff also filed an action for workers' compensation benefits with the Kansas Workers' Compensation Board. *Id.* at 974. The defendant disputed the claim and argued to the Kansas Workers' Compensation Board that it was not responsible for paying for the injuries. *Id.* The Kansas Workers' Compensation Board dismissed the plaintiff's claim for lack of jurisdiction and the plaintiff filed an action in the Indiana Workers' Compensation Board against the defendant. *Id.* at 974-75. Before the action was fully adjudicated, the defendant settled with the plaintiff. *Id.* at 975. Then, the plaintiff filed suit against the defendant for the delay in paying his claim. *Id.* During discovery, the plaintiff sought documents the insurer prepared after it processed, investigated, and denied the plaintiff's claim and after the plaintiff filed his suit for benefits with the Kansas Workers' Compensation Board. *Id.* at 977. The Seventh Circuit found the work product doctrine shielded those documents from discovery because they were prepared in anticipation of litigation and related to how the defendant intended to defend against the plaintiff's actions in Kansas and Indiana. *Id.*

Here, like *Logan*, the entries in the Litigation Notes dated on or after Hobbs filed this bad-faith litigation were surely "prepared in anticipation of litigation" with Hobbs,

as Cates' assignee. Fed. R. Civ. P. 26(b)(3). Hobbs does not contend she has a substantial need for these entries. Accordingly, the entries created on or after this suit was initiated constitute privileged work product.

However, USAA also asserts work product with respect to numerous entries in the Litigation Notes that were created years before Hobbs filed this suit against USAA. Neither *Logan* nor any other Seventh Circuit case says that a document cannot be privileged simple because it was created before litigation materialized. Rather, the key inquiry is whether the document was prepared "*because of* the prospect of litigation." *Binks Mfg. co. v. National Presto Industries, Inc.*, 709 F.2d 1009, 1118-19 (7th Cir. 1983) (emphasis in original) (internal quotations and citation omitted).

Here, USAA contends, "[T]he Litigation Notes were created in anticipation of litigation by USAA GIC's litigation department after USAA GIC could not settle Plaintiff's claim against USAA GIC's insured, thus requiring that claim to be litigated in state court. The purpose of the Litigation Notes was to track the defense of Plaintiff's litigation. Accordingly, that document constitutes protected work product" (Doc. 65, p. 5).

However, USAA cannot withhold documents under a claim that they constitute work product of Hobbs' personal injury lawsuit. Rather, USAA must establish the documents are work product of the *current* litigation. *See Woodruff v. Am. Family Mut. Ins. Co.*, 291 F.R.D. 239, 247 (S.D. Ind. Apr. 22, 2013) ("The documents [the insurer] seeks to withhold from production were created during and for the purposes of the [underlying personal injury lawsuit]. The court has no doubt that those documents would have been

subject to the work product doctrine and protected from disclosure to the plaintiff in [the underlying lawsuit]. However, here, [the insurer] seeks to use the work product doctrine to prevent the disclosure of these documents to its insured…the party for whom those documents were originally created."); *Cummin, Inc. v. Ace Am. Ins. Co.*, 2011 WL 1832813, at *5 (S.D. Ind. May 2, 2011) (evaluating the insurer's assertion of work product by determining whether documents were created because of the prospect of litigation between the insurer and insured and explaining, "At the very least, an insurer must show a critical factor that made it anticipate litigation…and offer specific facts demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way.").

To the extent USAA contends it anticipated this litigation with Hobbs once she rejected USAA's settlement offer in September 2014, the argument still fails. At the time Hobbs rejected USAA's settlement, a claim for bad-faith failure to settle was contingent on future failures to settle, a favorable judgment for Hobbs, *and* a judgment in an amount in excess of the policy limits. "The mere contingency that litigation may result is not determinative" of the work product analysis. *Binks*, 709 F.2d at 1119. Relatedly, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials…with the work product privilege; the privilege is not that broad." *Logan*, 96 F.3d at 976 (internal citations, quotations, and alterations omitted). USAA has not identified the critical moment of when it anticipated a bad-faith claim arising out of its failure to settle Hobbs' lawsuit.

In sum, USAA has failed to identify, on an entry-by-entry basis, why the work product privilege or the attorney-client privilege bars discovery of more than 100 entries in the Litigation Notes. The Court cannot rely on guesswork to exempt the entries from discovery. USAA bears the burden of establishing the entries in the Litigation Notes are privileged and it has not met that burden here for the majority of the Notes. However, it is apparent that any entry created on or after the date that Hobbs file this lawsuit was created in anticipation of this litigation. Accordingly, those entries are work product and not discoverable.

## II.     Rule 30(b)(6) Topic 3

USAA objects to Hobbs' Rule 30(b)(6) deposition Topic 3, which requests USAA's designated representative to testify to "[t]he duties USAA owed to James Riley Cates in handling the automobile claim brought against him and the policy-limit demand that was made on him by Stephanie Hobbs." USAA argues this topic improperly asks USAA's representative to provide a legal opinion.

The parties agree that "[q]uestions seeking a legal conclusion from a lay person exceed the permissible scope of a Rule 30(b)(6) deposition." *Schyvincht v. Menard, Inc.*, 2019 WL 3002961, at *2 (N.D. Ill. July 10, 2019). However, the parties disagree as to whether Topic 3 seeks a legal conclusion. At the hearing on the parties' dispute, Hobbs' counsel explained that USAA's legal department trains USAA's claims department on the law and that USAA has internal policies and rules for handling claims. According to Hobbs' counsel, she only requests to depose USAA's representative as to what duties

USAA's claim handlers were required to observe under USAA's internal policies and training, and whether those rules were followed.

The parties both cite *Menard* to illustrate the distinction between a factual matter and a legal opinion. In *Menard* the district court refused to strike a deposition topic that asked a representative his "duties and responsibilities…with respect to the safe handling of lumber." *Menard*, 2019 WL 3002961, at *1 & *4. However, the court found that topics that inquired into whether the plaintiff was "not exercising due care for his own safety" or that someone else was "responsible" for the plaintiff's injuries improperly sought legal conclusions. *Id.* at *1-2. In *Menard*, the plaintiff's counsel expressly stated he was seeking "both the underlying facts" and the defendant's "opinion." *Id.* at *2. An opinion on exercising "due care" and the "responsibility" of an individual would involve an interpretation of legal terms of art. *Id.* Thus, the topics improperly required a legal conclusion.

Here, Hobbs' deposition topic seeks facts rather than a legal conclusion. What duties USAA imposed on its claim handlers through policies, what legal duties USAA instructed its claim handlers, and whether USAA's claim handlers followed USAA's rules and policies are pure facts. To the extent Topic 3 requests an opinion on whether a claims handler breached a legal duty, the question improperly elicits a legal conclusion. Otherwise, a lay person can surely testify to the permissible matters described without interpreting any underlying legal concept. Accordingly, USAA's objection to Topic 3 is OVERRULED.

### Conclusion

For the reasons explained above, with respect to the Litigation Notes, USAA's objections as to relevancy are **OVERRULED**, USAA's objections based on attorney-client privilege are **OVERULLED**, and USAA's objections based on work product are **OVERRULED** as to documents dated before the filing of the instant litigation and **SUSTAINED** as to documents dated on or after the filing of the instant litigation. USAA's objection to Topic 3 in Hobbs' Rule 30(b)(6) notice is **OVERRULED**.

**IT IS SO ORDERED.**

**DATED: July 7, 2022**

s/Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
